*KSC/08.14.21*



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Christopher J. Romano*
*Special Assistant United States Attorney*
*Christopher.Romano@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

*DIRECT: 410-209-4907*
*MAIN: 410-209-4800*
*FAX: 410-962-0717*

August 19, 2021

VIA EMAIL

Joseph Balter, Esquire
Joseph Stiers, Esquire
Mt. Washington Mill
1340 Smith Avenue, Suite 200
Baltimore, MD 21209

Re: <u>United States v. Reginald Leon Bolden</u>
Crim. No. RDB-21- **00333**

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Reginald Leon Bolden (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by <u>August 30, 2021</u>, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

1.     The Defendant agrees to waive indictment and plead guilty to a one-count Criminal Information which charges the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 846. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

2.     The elements of Count One to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

     a.     That on or about the dates charged in the Criminal Information, in the District of Maryland:

          1. The Defendant knowingly, willfully, and unlawfully agreed with one or more persons to distribute, and possess with

intent to distribute, a mixture or substance containing a detectable amount of crack cocaine;

2.  The Defendant knew that the conspiracy would distribute 28 grams or more of a mixture or substance containing a detectable amount of crack cocaine; and

3.  The participation by the Defendant was knowing and voluntary, and not by accident or mistake.

<u>Penalty</u>

3.      The maximum penalty provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MAND. MIN. IMPRISON-MENT | MAX IMPRISON-MENT | SUPERVISED RELEASE | MAX FINE | SPECIAL ASSESS-MENT |
|-------|---------|--------------------------|-------------------|--------------------|----------|---------------------|
| 1 | 21 U.S.C. § 846 | 5 years | 40 years | At least 4 years | $5,000,000 | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

        a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the

case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      a.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree that the applicable base offense level is a **level 30** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(5) to account for the equivalent of at least 280 grams of cocaine base, but less than 840 grams of cocaine base, reasonably attributable to the Defendant's involvement in the offense.

b.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies

4

involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

<u>Rule 11 (c) (1) (C) Plea</u>

8.      a.      The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of between **96-120 months** in the custody of the Bureau of Prisons is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a).

        b.      At the time of sentencing, the Government agrees to dismiss any remaining counts in the indictment for which the Defendant is named.

        c.      This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

<u>Waiver of Appeal</u>

9.      In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

        a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

5

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

(i)     The Defendant reserves the right to appeal any sentence that exceeds **120 months**; and

(ii)    This Office reserves the right to appeal any sentence below **96 months**; and

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

10.     a.      The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b.      Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, specifically $3,445.00  seized from the Defendant at the time of his arrest and the search of his residence on April 21, 2020 and a 2011 Red Chevy Camaro (MD reg: 5CX4208, VIN:2G1FK1EJ8B9114079) seized on April 21, 2020.

c.      The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.      The Defendant agrees to assist fully in the forfeiture of the above property.  The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

6

e.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Defendant's Conduct Prior to Sentencing and Breach

11.    a.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Court Not a Party

12.    The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement, subject to the limitations outlined in paragraph 8. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

7

## Entire Agreement

13.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant.  There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement.  No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

        If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

                        Very truly yours,

                        Jonathan F. Lenzner
                        Acting United States Attorney

                By: _Christopher J. Romano_

                        Christopher J. Romano
                        Special Assistant United States Attorney

        I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney.  I understand it and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

___8/24/21___
Date

___Reginald Bolden___
Reginald Leon Bolden

        We are the Defendant's attorneys.  We have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant.  The Defendant advises us that the Defendant understands and accepts its terms.  To our knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

___8/24/2021___
Date

___Joseph A. Balter___
Joseph A. Balter, Esq.

_____
Date

_____
Joseph Stiers, Esq.

8

## ATTACHMENT A

### STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

The Harford County Narcotics Task Force undertook an investigation into a drug trafficking organization (DTO) distributing powder and crack cocaine in Harford County, Maryland. As part of the investigation detectives sought and received authorization on February 4, 2020, from a Circuit Court Judge for Harford County, to intercept wire and electronic communications of several members of the DTO. During the months of February, March, and April of 2020, detectives and monitoring agents intercepted numerous pertinent, drug related communications, over target telephones and Facebook accounts. The communications intercepted and surveillance of targets further confirmed the drug activities, including those of the Defendant, Reginald Leon Bolden.

On February 24, 2020, investigators surveilled co-defendants Bolden and Tremayne Murphy (Murphy) as they traveled to Wilmington, Delaware, to meet with a cocaine source of supply. After completing the transaction for 9 ounces of cocaine, Bolden and Murphy returned to Harford County in order to distribute the cocaine. Two days later, Murphy at the direction of Bolden was observed traveling to the Delaware Park and Casino to meet again with the source of supply in an effort to return the cocaine Bolden and Murphy had acquired two days earlier, as customers complained about the quality of the cocaine. Investigators intercepted a call from Bolden to Murphy. During the call Murphy explained to Bolden that the source of supply only

9

had 4 1/2 ounces of crack cocaine ready and asked Bolden what Murphy should do. Murphy explained to Bolden that they could either get their money back or wait a few days to obtain additional product. Bolden told Murphy in the call to do whatever Murphy felt was right.

On March 15, 2020, Bolden was intercepted regarding the purchase of 3 ounces of crack cocaine from co-defendant Joel Hammond (Hammond). Bolden had arranged the transaction through an intermediary, who transported money to Hammond and received a small backpack from Hammond, which investigators believed contained the cocaine. Upon the intermediary advising Bolden that he was back at his residence and asking Bolden to come meet him to obtain the crack, Bolden contacted Murphy, and thereafter Bolden texted the intermediary to inform him that Murphy would be coming to the residence to retrieve the crack cocaine. Shortly thereafter, investigators intercepted a call between Bolden to Murphy in which Murphy instructed Bolden to tell the intermediary that Murphy was out front of the intermediary's house. Surveillance detectives observed the intermediary exit his residence carrying the same small backpack previously observed, and enter a vehicle operated by Murphy, where he remained for approximately 1 minute and then exited Murphy's vehicle without the backpack. Surveillance then observed Murphy travel to Bolden's residence. After a brief period of time, BOLDEN exited Hammond's residence and proceeded to drive back to Harford County. Detectives had previously obtained a search and seizure warrant for 2737 Forge Hill Road as well as vehicles that BOLDEN owned. The Honorable Angela Eaves, Circuit Court Judge for Harford County, authorized the warrants. As BOLDEN returned to the county, members of the Harford County Sheriff's Office Special Response Team and Harford County Narcotics Task Force served the search warrant on BOLDEN and his Camaro during a traffic stop in the area of Rt. 152 and Rt. 1. During the search warrant service, BOLDEN removed from the driver's seat and taken into custody. A search of BOLDEN's person revealed a clear plastic bag containing two additional

plastic bags of a white substance as well as $660.00 in U.S. currency. Detectives opened the bag and observed that one of the inside bags contained a white hard rock like substance that was similar to powder cocaine that had been directly cut off of a kilogram of pressed cocaine. The total weight of this substance was 16 grams. In the second clear plastic bag was an off-white rock like substance that resembled crack cocaine. The total weight of this bag was 41 grams. Both substances were field tested utilizing a Narc II cocaine ID swab test kit. Both items tested positive for the presence of cocaine. The total weight combined for both items was 57.9 grams. After the stop, members of SRT and the Task Force regrouped and executed a search and seizure warrant at BOLDEN's residence of 2737 Forge Hill Road. During a search of the residence, the following items were located and seized several individually packaged bags of crack cocaine, weighing 12 grams, $2,785.00 in U.S. currency and numerous items of packaging material, and a digital scale containing suspected cocaine residue.

The parties stipulate that the amount of crack cocaine reasonably foreseeable to Bolden in connection with being a member of the DTO was at least 280 grams but less than 840 grams.

SO STIPULATED:

Christopher J. Romano
Special Assistant United States Attorney

Reginald Leon Bolden
Defendant

Joseph A. Balter, Esq.
Counsel for Defendant

Joseph Stiers, Esq.
Counsel for Defendant